UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALEXANDRIA S.

                    Plaintiff,

   v.                                              6:22-CV-20
                                                     (MAD/DJS)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

OFFICE OF PETER W. ANTONOWICZ     PETER W. ANTONOWICZ, ESQ.
Attorney for Plaintiff
148 West Dominick Street
Rome, New York 13440

U.S. SOCIAL SECURITY ADMIN.          AMANDA J. LOCKSHIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL        LUIS PERE, ESQ.
Attorneys for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11 & 14. For the

reasons set forth below, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be granted in part and Defendant's Motion be denied.

## I. RELEVANT BACKGROUND.

### A. Factual Background

Plaintiff was born in 1990. Dkt. No. 8, Admin. Tr. ("Tr."), p. 33. She completed high school and has past work experience as a cashier, a logistics specialist, and in food service. Tr. at pp. 62-63. Plaintiff alleges disability based upon a hernia, knee and hip problems, PTSD, anxiety, depression, obsessive compulsive disorder, asthma, bipolar disorder, COPD, colitis, sciatica, and bulging discs. Tr. at pp. 53-54.

### B. Procedural History

Plaintiff applied for disability and disability insurance benefits in December 2019. Tr. at p. 53. She alleged a disability onset date of July 1, 2017. *Id.* Plaintiff's application was initially denied on April 2, 2020, Tr. at pp. 80-85, and upon reconsideration on August 4, 2020. Tr. at pp. 88-93. Following that denial, she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 99-101. Plaintiff appeared at a hearing before ALJ Jeremy Eldred on January 15, 2021, at which Plaintiff and a vocational expert ("VE") testified. Tr. at pp. 29-52. On February 1, 2021, the ALJ issued a written decision finding Plaintiff was not disabled. Tr. at pp. 10-20. On November 9, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

## C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022. Tr. at p. 12. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. *Id.* Third, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; asthma, abdominal hernia, obesity, major depressive disorder, and mood disorder. *Id.* Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 13-15. The ALJ then found that Plaintiff has the residual functional capacity to perform a full range of work at the sedentary exertional level except that she:

> can climb ramps or stairs no more than frequently; can climb ladders, ropes, or scaffolds no more than occasionally; can crouch no more than frequently; can stoop, kneel, or crawl no more than occasionally; must avoid exposure to temperature extremes; must avoid exposure to concentrated dust, odors, fumes, or gases; can understand, remember, and carry out only simple and routine tasks; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks; can interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately adapt to ordinary changes in an unskilled occupation that involves only simple and routine tasks.

Tr. at p. 15.

Next, the ALJ found that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework

3

supports a finding that the [Plaintiff] is 'not disabled,' whether or not the [Plaintiff] has transferable job skills." Tr. at p. 18. The ALJ then determined that based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 18-19. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at pp. 19-20.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

5

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff asserts that the ALJ failed to properly assess her mental impairments as required pursuant to 20 C.F.R. § 404.1520a. Dkt. No. 11, Pl.'s Mem. of Law at pp. 10-24. Within that claim, Plaintiff alleges specifically that the ALJ erred in the evaluation of opinion evidence from both her treating mental health provider and a psychological consultative examiner, improperly considered evidence of her activities of daily living ("ADLs") and engaged in improper "cherry-picking" of evidence. *Id.* In response,

6

Defendant asserts that Plaintiff has failed to demonstrate "any error in the ALJ's evaluation of the paragraph B criteria and even if she did, the error would be harmless since she admits that her impairments did not meet or equal a listing." Dkt. No. 14, Def.'s Mem. of Law at pp. 1, 3-8. Defendant also argues that the ALJ's evaluation of the opinion of Plaintiff's treating mental health provider was proper. *Id.* at pp. 8-11.

As an initial matter, Defendant asserts that any error with respect to the ALJ's listings analysis was harmless because Plaintiff "freely admits that her impairments do not meet or equal a listing." Def.'s Mem. of Law at p. 3 (emphasis omitted). While Plaintiff does state that she "does not allege that she has an impairment which is listed in Appendix 1 of the Regulations" and therefore "a finding of disabled cannot be made at step 3 of the above cited sequential evaluation," she goes on to explain her position that "her eligibility for benefits rests upon a step 5 evaluation." Pl.'s Mem. of Law at p. 20. Accordingly, Plaintiff's claim of error is premised upon an error in the RFC determination, not the earlier severity determination.

### A. Evaluation of Evidence

#### *1. Evidence Related to Plaintiff's ADLs*

Plaintiff points to portions of the ALJ's decision which cite broadly to hundreds of pages of exhibits as proof that the ALJ did not properly assess the medical evidence and discussed only certain evidence unfavorable to Plaintiff's claims. This, Plaintiff alleges, shows that the ALJ did not properly consider "all evidence" as required by 20 C.F.R. § 404.1520a. Pl.'s Mem. of Law at pp. 13-20. A review of the record reveals

that the ALJ placed substantial weight on evidence related to the performance of certain activities of daily living. In the RFC assessment, the ALJ specifically asserts that "**[t]he sole fact** that the claimant is able to carry out the responsibilities of caring for two young children and an elderly relative with Parkinson disease is inconsistent with physical or mental disability." Tr. at p. 16 (emphasis added). The Court finds this undeveloped statement problematic.

First, while an ALJ may properly consider these activities when assessing the intensity and persistence of symptoms, *see Tenesha G. v. Comm'r of Soc. Sec.*, 2022 WL 35998, at *7 (N.D.N.Y. Jan. 4, 2022), the ALJ here "appeared to place disproportionate weight on [P]laintiff's activities of daily living, none of which 'equate to the ability to perform substantial gainful activity.'" *David F. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5937670, at *9 (D. Conn. Dec. 16, 2021) (quoting *Berg v. Colvin*, 2016 WL 53823, at *8 (D. Conn. Jan. 5, 2016)). The Second Circuit has "stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)); *Moss v. Colvin*, 2014 WL 4631884, at *33 ("It is well-settled in the Second Circuit that the capacity to care for oneself does not, in itself, contradict a claim of disability as people should not be penalized for enduring the pain of their disability in order to care for themselves.") (S.D.N.Y. Sept. 16, 2014) (citation and quotation marks omitted)). "There are critical differences between activities of daily living (which one can do at his own pace when

he is able) and keeping a full time job." *David F. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5937670, at *9 (quoting *Moss v. Colvin*, 2014 WL 4631884, at *33). This is why "an ALJ should take into account whether any evidence of daily activities shows that the claimant 'engage[d] in any of these activities for sustained periods comparable to those required to hold … a job.'" *Kelly W. v. Kijakazi*, 2021 WL 4237190, at *10 (D. Conn. Sept. 17, 2021) (quoting *Balsamo v. Chater*, 142 F.3d at 81).

Additionally, "[a]n ALJ may not rely on a claimant's daily activities to discredit her while 'wholly ignor [ing] the qualifications that Plaintiff placed on [her] ability to engage in [those] activities.'" *Id.* (quoting *Eldridge v. Colvin*, 2016 WL 11484451, at *15 (S.D.N.Y. June 29, 2016), *report and recommendation adopted*, 2016 WL 6534258 (S.D.N.Y. Nov. 2, 2016)). The ALJ here stated:

> Although the claimant alleges debilitating impairments, the record shows that she is capable of performing a wide range of activities. For example, the claimant is able to attend to her personal care needs, cook and prepare food, clean, do laundry, shop, drive, manage money, play cards, go to church, watch television, provide childcare for young children, and care for an elderly relative with Parkinson disease.

Tr. at p. 16 (citing Tr. at pp. 29-52, 181-198, 379, 489 & 504).

The ALJ does not reconcile his reliance on these ADLs with the qualifications that Plaintiff consistently placed on her ability to engage in those activities. For example, the records cited to by the ALJ regarding Plaintiff's ability to cook indicate that she is able to do cooking "on good days," Tr. at p. 489, and can prepare "easy microwave meals," sometimes with the assistance of her aunt, Tr. at p. 187. In Plaintiff's

9

hearing testimony, also cited by the ALJ, she stated that her fiancé "does all the cooking and all that because I cannot do it." Tr. at p. 41. While Plaintiff does indicate that she has a license and is able to drive a car, Tr. at pp. 34 & 41, she also consistently states that she rarely leaves the house alone due to her anxiety and mental health symptoms. *See* Tr. at pp. 41 & 188.

Finally, the ALJ placed great evidentiary weight on Plaintiff's reported ability to care for her children and elderly relative with Parkinson's disease and concludes that this "sole" fact contradicts a finding of disability. Tr. at pp. 14 & 16. But as appropriately noted by one court – "[w]hile the ALJ can and should consider the claimant's everyday activities in making his determination, it is legal error to presume, without further development, that such activities demonstrate a lack of disability." *Eli v. Berryhill*, 2017 WL 3610510, at *11 (S.D.N.Y. Aug. 21, 2017) (internal citations omitted). A careful reading of the record demonstrates that Plaintiff becomes easily agitated "[t]aking care of husband's grandmother with [Parkinson's disease] and will become [frustrated] and has thrown objects at her." Tr. at p. 266. It does not logically follow that an individual who experiences such difficulty handling frustration that she throws items at an elderly relative cannot be disabled because of her ability to engage in caregiving for that relative. "The ALJ must build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review." *Pamela P. v. Saul*, 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020) (internal quotation marks omitted). Here, merely because Plaintiff is stated to care for her children and a relative, it does not

necessarily follow that she is not disabled without an analysis of what that care entails and the manner in which it is provided. Nor is such an error harmless, because "[p]art and parcel to the RFC determination is the ALJ's review of the medical opinion evidence and the credibility of Plaintiff." *Dumas v. Comm'r of Soc. Sec.*, 2015 WL 1403342, at *13 (N.D.N.Y. Mar. 26, 2015). Accordingly, this matter is appropriately remanded for further assessment on this issue.

### 2. Evaluation of Medical Opinion Evidence

Plaintiff also asserts that the ALJ erred in the evaluation of medical opinion evidence related to her mental impairments. Pl.'s Mem. of Law at pp. 20-24. "[T]he new SSA regulations require an ALJ to consider a number of factors when evaluating the medical opinion evidence in the record – 'most importantly, the "supportability" and "consistency" of each submitted medical opinion.'" *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (quoting *Velasquez v. Kijakazi*, 2021 WL 4392986, at *25 (S.D.N.Y. Sept. 24, 2021)). "The new regulations require an ALJ to 'specifically' explain 'how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole.'" *Id.* (quoting *Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021)). At issue here are opinions from consultative psychiatric examiner Corey Anne Grassl, Psy.D, and Plaintiff's treating mental health provider Laneasha Eudell, N.P. *See* Tr. at pp. 502-505, 551-553.

Dr. Grassl performed a psychiatric evaluation of Plaintiff in March 2020 and diagnosed: (1) major depressive disorder, recurrent episodes, moderate; (2) obsessive-compulsive disorder; and (3) posttraumatic stress disorder with panic attacks, which resulted in a "guarded" prognosis with an expected impairment duration in excess of two years. Tr. at p. 505. Dr. Grassl opined that Plaintiff has marked limitations in functional domains related to concentration and persistence and in her ability to adapt or manage herself. Tr. at p. 504. More specifically, Dr. Grassl found that Plaintiff would have marked limitations in the ability to sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, to regulate emotions, control behavior, and maintain well-being. The ALJ found this opinion to be "partially persuasive," specifically rejecting only the marked limitations, because he found them to be "inconsistent with other substantial evidence in the record." Tr. at p. 18. In support of his finding, the ALJ cited generally to "mental status examination findings in the longitudinal treatment records … and the mental demands of the claimant's activities of daily living." *Id.* (citing 254-282, 517-528, 529-550, 289, 303, 314, 332, 381) The ALJ's reliance on the "mental demands" of Plaintiff's ADLs to discount Dr. Grassl's opinion raises potential problems for the reasons discussed in more detail above.

In contrast to Dr. Grassl's opinion, the ALJ found NP Eudell's opinion "unpersuasive." Tr. at p. 18. The only explanation provided for this finding was as follows: "The assessment document does not contain a narrative rationale, and the

disabling limitations indicated by Ms. Eudell are not consistent with her own longitudinal mental status examination findings, as referenced above (Exhibits 1F, 15F, and 16F)." *Id.* Although the ALJ is not required to give any special deference to the opinions of treating providers under the new Social Security Administration regulations, "he is still required to articulate how he considered the medical opinion, including explaining how he considered the 'supportability' and 'consistency' factors." *Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 8 (W.D.N.Y. 2022). A conclusory analysis of these factors "precludes the Court from undertaking meaningful review" of the ALJ's decision, *id.* at 9, and the failure to adequately explain how he considered the medical opinions in the record and weighed the corresponding evidence can result in procedural error necessitating remand. *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). The conclusory analysis provided here "frustrates meaningful review" and constitutes reversible legal error. *Nicole L. v. Kijakazi*, 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022).

### B. Proper Disposition on Remand

Finally, Plaintiff has requested that the Court reverse the Commissioner's decision and remand with the direction "to award benefits." Pl.'s Mem. of Law at p. 24. However, "a remand solely for the calculation of benefits is an extraordinary action." *Murphy v. Saul*, 2021 WL 1318044, at *1 (E.D.N.Y. Apr. 8, 2021) (quoting *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 279 (S.D.N.Y. 2006)). As a result, remand solely for the calculation of benefits "is appropriate only where the record 'provide[s] persuasive

evidence of total disability that [would render] any further proceedings pointless.'" *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (quoting *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 2000)). "[T]his is a demanding standard, reserved for cases where the record conclusively establishes both a total disability and an inability to work." *Lori H. v. Kijakazi*, 2022 WL 675702, at *3 (N.D.N.Y. Mar. 7, 2022) (collecting cases). The Court has identified several errors in the ALJ's analysis which warrant remand. However, there remains conflicting medical evidence in the record and it is "within the province of the ALJ to resolve" those conflicts. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The Court therefore respectfully recommends that the case be remanded for the ALJ to reweigh medical evidence related to Plaintiff's mental health impairments and to formulate a new RFC in accordance with that evidence.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings be **GRANTED in part and DENIED in part**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's decision denying Plaintiff disability benefits be **REVERSED** and the case be **REMANDED** pursuant to section four for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[1] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: February 3, 2023
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[1] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).